UNITED STATES *v.* PAN PACIFIC IMPORTERS, LTD.

**No. 5635.**—Invoice dated Hanoi, French Indo-China, March 20, 1941.
Certified March 24, 1941.
Entered at Los Angeles, Calif., May 23, 1941.
Entry No. 5644.

(Decided May 11, 1942)

*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the plaintiff.

*Harper & Harper (Abraham Gottfried* of counsel) for the defendant.

DALLINGER, Judge: This collector's appeal to reappraisement involves the question of the dutiable value of certain straw baskets, and floor coverings imported from French Indo-China and entered at the port of Los Angeles on May 23, 1941. Appraisement was made at the entered values. The collector, however, contends that there should have been added to such values a 10 per centum selling commission which, he insists, is a part of the dutiable value. On the other hand, the importers contend that said commission was a buying and not a selling commission.

At the hearing held at Los Angeles on December 8, 1941, the Government offered in evidence a certified copy of a report made by Customs Agent Charles L. Turrill, which, on the statement that said report covered three New York entries of merchandise, but did not refer to the merchandise covered by the Los Angeles entry involved herein, was refused admission as an exhibit by the trial judge, but was marked plaintiff's exhibit 1 for identification. Subsequently, on the same day, the Government offered in evidence the testimony of George B. Mason, an investigator in the customs service of the Treasury Department, who testified in part as follows:

Q. During the course of your investigation did you interview Mr. R. N. Mathisen, owner of the Pan Pacific Importers?—A. Yes.

Q. That investigation referred to plain seagrass matting, exported on April 14, 1941, from Indo-China?—A. I believe that is the date.

Q. Did you see Mr. Mathisen?—A. I believe so.

Q. Where did you see him?—A. At his place of business at 1151 South Wall, here in Los Angeles.

Q. Did you have a talk with him?—A. I did.

Q. Did you ask him about this importation?—A. I did.

Mr. GOTTFRIED. Before he is asked to repeat any conversation, I want to object until it is shown he had a conversation about this entry. There has been no connection yet with this particular entry.

Mr. SPECTOR. It doesn't have to be about this particular entry. This was about transactions between the exporter and the importer.

\*      \*      \*      \*      \*      \*      \*

Judge DALLINGER. The evidence must relate to this particular importation. I understand, Mr. Witness, you don't know whether you talked about this particular importation?

The WITNESS. There was no special reference to any particular importation. There was one date mentioned and that's all.

By Mr. SPECTOR.

Q. Do you know whether it referred to Entry 5844/3?—A. I believe that is the entry. I believe that is the entry we discussed.

Mr. GOTTFRIED. It is not a question of what you believe. Are you prepared to swear, at the present time, it was that particular entry?

The WITNESS. I swear to it being that entry.

Mr. GOTTFRIED. All right.

By Mr. SPECTOR.

Q. Tell us the conversation you had with Mr. Mathisen regarding the purchase of these rugs, or matting, or whatever they are. What did he tell you and what did you say to him?—A. I called on Mr. Mathisen at his place of business and told him that I had under investigation a matter of a commission, a 10 per cent commission, being paid in connection with a certain importation of grass rugs from Indo-China. I asked him how long he had been importing these particular rugs and he stated a couple of years previous to August, 1941. He had been to San Francisco and had visited the Exposition there and he saw on display some grass rugs, and he inquired about them from the man in charge of the exhibit and learned that they had been sent there by Establishment Fabrinat of Indo-China. He thereupon wrote to those people and asked them for samples which they sent him. He then showed me a letter that had to do with the payment for the shipments of these grass rugs, baskets, etc., but he did not hear about the 10 percent commission until sometime later. He then wrote to Establishment Fabrinat and told them that thereafter they must show the 10 percent commission as a separate item on the face of the consular invoice.

*   *   *   *   *   *   *

*   *   *   I asked Mr. Mathisen to permit me to examine his records, but he did not produce them that day, *   *   *   so I called on him again several days later, and he had procured from his records a couple of letters pertaining to shipments of grass rugs and the payment of the 10 percent commission. *   *   *

*   *   *   *   *   *   *

Judge DALLINGER. Did you make a copy of the letter, to which you have referred, at that time?

The WITNESS. I didn't type it myself. The stenographer did, at my request, in my office.

Judge DALLINGER. Did you have the letter before you when you dictated the copy?

The WITNESS. Yes, sir.

*   *   *   *   *   *   *

Q. Is this the letter dated December 27, 1940?—A. Yes, this is the letter.

Mr. SPECTOR. I offer this letter in evidence.

Mr. GOTTFRIED. I renew my objection. It doesn't refer to this particular entry.

Judge DALLINGER. The witness has testified, and he now states, that he did speak to Mr. Mathisen about this particular entry, and he asked him to produce papers relative to the matter, and this is one of the letters.

*   *   *   *   *   *   *

Judge DALLINGER. Objection overruled; it may be marked.

[The same was received and marked plaintiff's exhibit 2 * * *.]

By Mr. SPECTOR.

\* \* \* \* \* \* \*

Q. Well, is this a copy of a letter you sent to Establishment Fabrinat?— A. This is a letter addressed to the Pan Pacific Importers by the shippers, Establishment Fabrinat, dated November 15, 1940.

Q. The letter, Exhibit 2, is an answer to that?—A. The letter dated December 27, 1940, is in reply to this letter.

Mr. SPECTOR. I offer that in evidence.

Mr. GOTTFRIED. I make the same objection. There is nothing to show that it refers to this particular entry.

Judge DALLINGER. Objection overruled. The two may be admitted as a collective exhibit.

\* \* \* \* \* \* \*

[The two letters referred to were received and marked plaintiff's collective exhibit 2, * * *.]

On cross-examination the witness testified in part as follows:

X Q. Did he produce the file on this particular entry?—A. No; the file he had pertained to everything he ordered. He had no separate file.

X Q. You made no attempt to check anything else?—A. No. We had considerable discussion on the prices of mats which were irrelevant, I thought, to this particular investigation. We were only investigating as to what this 10 per cent commission did represent.

At the conclusion of the cross-examination, counsel for the Government offered exhibit 1 for identification in evidence on the ground that it was connected with the testimony of the witness Mason, and over objection of counsel for the plaintiff it was admitted in evidence as plaintiff's exhibit 1.

In the report of Customs Agent Turrill (plaintiff's exhibit 1) appears the following:

Purchase Price: U. S. $0.285 per square yard C & F New York.

The consular invoices all list as included in the above price cost of freight, inland transportation, etc., and buying commission 10%.

\* \* \* \* \* \* \*

Mr. Philip Brenner, president of the importing corporation, stated to the undersigned (which statement was confirmed by copies of the correspondence and cables) that the negotiations and contract had been made only with Establishment Fabrinat of Hanoi; that a commission had never been mentioned, nor had his firm any knowledge of the buying commission set forth in the shipper's invoices; and that his firm had only been interested in the C. I. F. price to be paid to Establishment Fabrinat of Hanoi.

\* \* \* \* \* \* \*

*Commission:*

Inasmuch as the contract placed with Establishment Fabrinat of Hanoi failed to mention any commission or to indicate that Establishment Fabrinat of Hanoi is not the actual seller of the merchandise, it is believed that the 10% commission set forth in the consular invoices represents the seller's profit.

In the letter from "Establissements Fabrinat," the exporter, to the importer herein, dated November 15, 1940, forming part of plaintiff's collective exhibit 2, occurs the following:

*Mr. I. Ross.*—We worked with this gentleman for more than these 2 years. When we started to cooperate with you we have asked Mr. Ross to cease his sales in Pacific Coast. This letter confirmed us that he has firms having their chief stores in N. Y. and branches in other parts of the United States. As these are their old clients, he cannot help from satisfying their requests. We wrote to Mr. Ross again recently to request him not to make any sale in Pacific Coast and are waiting for his answer. * * *

After his visit to Hanoi, Mr. Ross has made us advances. These vary from US $1000.00 to U. S. $2000.00 according to the importance of his orders. We gave him original prices and relying on these quotations he gave us firm orders. If baskets are accidentally increased as in prices we have to advise Mr. Ross of these increases and he will be free to accept new prices or to cancell his orders. We establish invoices with buying prices plus 10% of commission for shippers, forwarding expenses of samples, cables expenses, correspondences, freight, insurances, commission for banks, all are supported by Mr. Ross and are specified at the bottom of invoices. In this way Mr. Ross can obtain prices 20% lower than you for he has to support all increases and all expenses. Mostly when we buy baskets with funds issued by Mr. Ross there will run less risks. * * *

As Mr. Ross has come personally to Hanoi, he knows us better than you, that is the reason why he made advances to us with full confidence. * * *

In the letter from the importer herein to the Establissement Fabrinat, the exporter, dated December 27, 1940, in reply to the foregoing letter of November 15, 1940, and forming part of plaintiff's collective exhibit 2, occurs the following:

This will acknowledge your letter #18 of November 15. We appreciate the information which you have given us regarding the method under which you carry on business with Mr. Ross. * * *

*        *        *        *        *        *        *

We appreciate your offer to do business with us on the same basis as that under which you operate with Mr. Ross. This does not seem to be practical at this time, and our bank at the moment would not look with favor upon it largely due to the unsettled conditions existing. So for the time being, we prefer to continue as we are now operating.

*        *        *        *        *        *        *

Now, coming back to the original purpose of this letter. In the first place, we feel that the differential between our price and that offered to Mr. Ross is entirely out of line as compared with the value of the service rendered. * * *

Upon this record I find that the 10 per centum commission involved herein is not a buying commission at all in spite of the statement to that effect appearing on the invoices. In my opinion it is either a selling commission or a portion of the profit of the exporter herein and therefore not properly deductible. I therefore find the proper dutiable value of the merchandise herein to be the appraised values thereof plus 10 per centum, which is the export value.

Judgment will be rendered accordingly.